UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**MARCUS BIAS,**<br><br>*Defendant.* | Case No. 1-22-cr-380 (ABJ) |

### UNITED STATES' SENTENCING MEMORANDUM

The United States of America files this sentencing memorandum and respectfully asks the Court to sentence defendant Marcus Bias, a former District of Columbia Department of Corrections (DOC) Officer, to 60 months in prison.ABusing the authority that he had as a corrections officer, the defendant assaulted a handcuffed and compliant inmate by slamming the inmate's head into the corner of a metal doorframe during transport, causing significant injury. For the following reasons, a 60-month term of imprisonment is a just sentence that comports with the factors in 18 U.S.C. § 3553(a).

I.  **PROCEDURAL BACKGROUND**

On November 18, 2022, a federal grand jury charged the defendant with one count of violating 18 U.S.C. § 242. ECF No. 1. The indictment alleges that, on or about June 12, 2019, in the District of Columbia, the defendant, while acting under color of law, willfully deprived inmate J.W. of the right, secured and protected by the Constitution and laws of the United States, to be free from the deprivation of liberty without due process of law, which includes the right to be free from the use of unreasonable force. *Id.* at P. 2. Specifically, during escort, the defendant intentionally and forcefully pushed J.W. into a metal doorframe causing J.W.'s head and face to

1

hit the metal doorframe. *Id.* Further, the offense resulted in bodily injury to J.W., and it included the use of a dangerous weapon. *Id.*

On March 26, 2024, the defendant executed a plea agreement, agreeing to plead guilty to the indictment, in exchange for the government's agreement to allocute for a sentence of up to, but no more than, 60 months in prison. *See* ECF No. 39, P. 1, 3 & 4. The charge is punishable by up to ten years in prison, a fine up to $250,000, a supervised release term up to three years; and mandatory restitution under 18 U.S.C. § 3663A.[1] *Id.* at P. 1. The Court accepted the defendant's guilty plea on March 26, 2024. Sentencing is set for June 28, 2024.

## II. THE DEFENDANT'S OFFENSE CONDUCT

On June 12, 2019, while transporting J.W. from DOC's dining hall to the medical unit, the defendant intentionally and forcefully pushed J.W., who was handcuffed behind his back and compliant with transport, into a metal doorframe. As a result of the defendant's conduct, J.W.'s head and face slammed into the corner of the metal doorframe. J.W. sustained bodily injury, which included a split forehead that required outside emergency medical treatment and layers of stitches, as medical professionals at DOC did not have the resources to treat it. The defendant's actions also involved the use of a dangerous weapon. The defendant used the corner of the sharp, metal doorframe against a sensitive body part—J.W.'s head. The doorframe is capable of inflicting serious bodily injury or causing death, and the officers, including this defendant, are trained that such conduct is never a proper law enforcement technique.

---

[1] We are not seeking restitution in this case, as costs were borne by the government. Additionally, J.W. has passed away from a cause unrelated to this case. However, consistent CVRA, the government has been in contact with J.W.'s mother. She has indicated that she does not have any amounts to claim for restitution; however, she intends to submit a victim-impact statement for the Court's consideration.

After slamming J.W.'s forehead into the corner of the metal doorframe, the defendant falsely claimed in an official DOC report that J.W. "pull[ed] away" and "fell" into the doorframe. The defendant's statement is contradicted by DOC surveillance video, which shows the defendant's use of excessive force on J.W., and by other officer eyewitness testimony.

The defendant's assault of J.W. during his escort of J.W. was preceded—and likely motivated by—J.W.'s earlier assault on a fellow officer in a different part of the jail. Earlier on June 12, 2019, J.W. snuck away from a required re-entry program, disobeyed officer orders to go to his cell, and started using a phone in the dining room instead. An officer who was attempting to stop J.W. held the cord of the phone to get J.W.'s attention. In response, J.W. hit the officer in the face once with his elbow, which only caused mild redness. This resulted in a "Code Blue" call over the radio, which is used to alert officers to respond to an inmate-on-officer assault. Five Emergency Response Team (ERT) officers, including the defendant, responded. According to ERT, J.W. initially resisted being restrained and punched and kicked toward the ERT officers. However, after using OC spray and hands-on defensive tactics, the ERT team was able to handcuff and subdue J.W. inside of the dining room. Thus, ERT gained J.W.'s compliance in the dining room, and any threat to officers had ended before J.W. was escorted out.

Next, ERT planned to transport J.W., who was now handcuffed and unresisting, through the "sally port," which is a short hallway between adjacent units of the jail, to the medical unit, following their use of the OC spray. There are metal doorframes on each end of the sally port. At the end of the hallway where they were exiting the sally port, the defendant—intentionally and without provocation, but likely in retaliation for J.W.'s earlier actions—assaulted J.W. by pushing his face and head into the metal doorframe. Because he was handcuffed behind his back, J.W. was unable to protect himself from hitting the metal doorframe, and he dropped to the ground from the impact to his head.

3

As a result of the defendant's assault, J.W. sustained injuries to his face and neck. Photos show a deep gash to J.W.'s forehead, blood flowing down J.W.'s face from the gash, blood splatter on the metal doorframe, and a trail of blood on the hallway floor as ERT officers continued escorting J.W. to the medical unit. DOC medical professionals were unable to adequately treat J.W.'s injuries, so they called 911 to transport J.W. to the emergency room. There, he received two layers of stitches for the wound on his head and had to wear a neck brace.

Disturbed by what they saw on surveillance video and recognizing that the defendant used deadly force when no force was needed or permitted, as soon as DOC leadership reviewed footage of the incident, they fired the defendant and escorted him out of the facility. Along with this memorandum, the government is submitting four exhibits for the Court's consideration at sentencing: two videos of the defendant's assault on J.W. and two photographs of J.W.'s injuries.

### III. THE GUIDELINES CALCULATION

On May 23, 2024, the United States Probation Office (USPO) filed a Presentence Investigation Report (PSR). *See* ECF No. 42. The PSR is correct. It is also consistent with the parties' guidelines calculation in the plea agreement. *See* ECF No. 39, P. 2. The PSR calculated the defendant's base offense level for his violation of 18 U.S.C. § 242 as a level 14 under U.S.S.G. § 2H1.1(a)(1) by cross-referencing the aggravated assault guideline under U.S.S.G. § 2A2.2. PSR at P. 6 ¶ 26. The PSR then correctly added four levels under U.S.S.G. § 2A2.2(b)(2)(B) because a dangerous weapon was used, three levels under U.S.S.G. § 2A2.2(b)(3)(a) because J.W. sustained bodily injury, six levels under U.S.S.G. § 2H1.1(b)(1) because the defendant committed the crime while acting under color of law, and two levels under U.S.S.G. § 3A1.3 because J.W.

4

was physically restrained during the offense.[2] *Id.* at P. 6 ¶¶ 26–28. After accounting for three acceptance-of-responsibility points, the PSR correctly calculated the defendant's total offense level as 26. *Id.* at P. 6 ¶ 36. The defendant's criminal history category is one, and the corresponding guidelines range is 63–78 months in prison. *Id.* at P. 4 ¶ 6.

In sum, in the PSR, the USPO applied the same guidelines that the parties agreed to in the plea agreement. *See id.* at P. 6; *see also* ECF No. 39, at P. 2. The government did not object to the PSR. *See* ECF No. 44. The defendant objected to the PSR. *See* ECF No. 45. However, counsel for the government and counsel for the defendant conferred on June 14, 2024, and, on June 19, 2024, defense counsel withdrew his objection, *see* ECF No. 46. Therefore, the guidelines are undisputed, and the parties agree with the calculation in the plea agreement and in the PSR.

## IV.    SENTENCING RECOMMENDATION

A sentence of 60 months in prison is reasonable, appropriate, and serves the purpose of the factors set forth in 18 U.S.C. § 3553(a).

### A. Legal Standard

The sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" that Congress identified in 18 U.S.C. § 3553(a)(2). First, the court shall begin the process of determining an appropriate sentence by calculating the correct sentencing range under the guidelines. *See Gall v. United States*, 552 U.S. 38, 49 (2007); *United States v. Booker*, 543 U.S. 220, 264 (2005); *United States v. Kaufman*, 791 F.3d 86, 90 (D.C. Cir.

---

[2] The PSR did not include an obstruction enhancement. Under U.S.S.G. § 3C1.1, for a two-level upward adjustment, there is both a "willful" mens rea requirement and a nexus to the investigation or prosecution of the offense—the defendant must have "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." The defendant was not charged with obstruction in this case. Additionally, the PSR is consistent with the parties' guidelines calculation in the plea agreement. *See* ECF No. 29, P. 2.

5

2015). After determining the appropriate guidelines calculations, the court shall evaluate the sentence for substantive reasonableness in light of the factors set forth in 18 U.S.C. § 3553(a). *See Nelson v. United States*, 555 U.S. 350, 351 (2009); *United States v. Motley*, 587 F.3d 1153, 1158 (D.C. Cir. 2009). Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence, the court shall consider these factors applicable to this case, among others:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant; and

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

**B. The government's recommended sentence is sufficient but not greater than necessary to comply with the purposes set forth in Section 3553.**

The seriousness of the offense, the history and characteristics of the defendant, the need for deterrence, and the need to avoid sentencing disparities all support a 60-month sentence in this case.

### *1. The nature and circumstances of the offense and the history and characteristics of the defendant.*

The defendant used his position of trust and power to assault a vulnerable inmate who was suffering from the effects of OC spray, handcuffed behind his back, complying with the defendant's transport, and helpless to protect himself. While the defendant's assault on J.W. was quick—a seconds-long impact, rather than a prolonged beating, for example—it was among the most serious types of crime, as the defendant could have killed J.W., and he got lucky that he did not. The defendant used deadly force by slamming J.W.'s head into the corner of a metal

doorframe when zero force was needed or justified. Officers, including the defendant, are specifically trained that it constitutes deadly force. DOC officers, including this defendant, are also taught that doing what the defendant did is a crime. The DOC use of force policy (5010.9H #14) explicitly states that, "[u]nreasonable force is a level of force that is unnecessary or excessive given the totality of the circumstances presented to staff members at the time the force is applied. Use of unreasonable force is prohibited and, if used, will subject staff members to investigation, disciplinary action and possible criminal prosecution or civil liability." The policy also lists the following as an example of a use of force that is "considered unreasonable and prohibited unless circumstances justify the use of deadly force": "[d]eliberately or recklessly striking or causing an individual's head to strike against a hard, fixed object (e.g., roadway, driveway, concrete floor, wall, jail bars, etc.)." Thus, the defendant knew better, and he chose to violate the law in a way that could have led to the death of an inmate that he swore to protect. And he did so out of anger and simply to retaliate against J.W.—to remind J.W. that *he* was the one with the badge and power, and that he should not be disrespected. The nature and the circumstances of the defendant's offense cannot be overstated.

     As to the defendant's history and characteristics, however, the government acknowledges that the defendant has pled guilty to the crime as charged, accepting some responsibility for his actions. Additionally, when the defendant assaulted J.W., he was a probationary DOC employee. He had only been working at DOC for 18 months, and yet, in that short amount of time, he had been placed on ERT, which is tasked with responding to the most serious and dangerous situations in the facility, such as inmate-on-officer assaults, like in this case. This in no way excuses the

defendant's egregious crime; however, we consider these mitigating factors in submitting to the Court that a 60-month sentence is appropriate here.[3]

### 2. *The need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment.*

A term of incarceration is necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment, and a 60-month sentence will accomplish these objectives. As detailed above, the severity of the defendant's crime cannot be overstated, and it demands a meaningful sentence. He took an oath to uphold the Constitution and laws of the United States and to fulfill his duty as a public servant by protecting inmates in his care and custody, and, in doing so, he was entrusted by the government with immense power over them. The defendant violated that oath by abusing his power when he assaulted a handcuffed and compliant inmate who was relying on him for transportation to the medical unit so that he could be decontaminated and stop suffering from the effects of OC spray. Courts have held that offenses committed by law enforcement officers should be taken particularly seriously due to their position of authority. *See, e.g.*, *United States v. Herbert*, 813 F.3d 551, 563 (5th Cir. 2015) (affirming an upward variance in the sentencing of a defendant-officer based on the district court's finding that the defendant abused his position of trust); *United States v. Thames*, 214 F.3d 608, 614 (5th Cir. 2000) ("A defendant's status as a law enforcement officer is often times more akin to an aggravating as opposed to a mitigating sentencing factor, as criminal conduct by [law enforcement] constitutes an abuse of a public position."); *United States v. Rogozinski*, 339 F. App'x 963, 967 (11th Cir. 2009) ("The court

---

[3] The government is not moved by the defendant's lack of criminal history, as, like all color-of-law defendants, if the defendant had any meaningful criminal history, DOC would not have hired him. It is because of his lack of criminal history and other similar characteristics that the defendant was entrusted with a position of power, and those same characteristics reveal that the defendant understood that his actions were wrong, and that he was well-equipped to make a better decision.

found that [the defendant's] federal service 'in this case' was 'an aggravating factor because' [the defendant] committed his crime while employed by the government and 'violated his trust as a federal law enforcement officer.'"). Sixty months in prison is needed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for violating it.

### 3. *The need to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant.*

A 60-month sentence is further needed not only to deter the defendant but also to send a message to other corrections officers that senselessly assaulting inmates in their care will result in strict penalties. By virtue of his felony conviction, the defendant will never again act with the delegated authority of a law enforcement officer. Nonetheless, the egregious nature of the defendant's offense conduct, and his evident disrespect of the law, militate in favor of 60 months in prison to afford specific deterrence to further crimes. The defendant abused his position of trust to commit his crime, and he did so in front of witnesses. This reveals the defendant's belief that he was above the law and that he would get away with his crime.

In addition to the need for specific deterrence, Congress has stated that a purpose of sentencing is also "to deter others from committing the offense." S. Rep. No. 98-225, at 75-6 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3259. While the sentencing goal of general deterrence is not always the most compelling factor, in law enforcement misconduct cases, it is exceptionally important. When officers use unjustified force on members of the community it shatters public trust in law enforcement, which, among other bad consequences, makes the job of officers who are doing their best harder and more dangerous. Strict sentences in these types of cases are important. They send a message to vulnerable populations—like inmates, arrestees, and others—that their safety and well-being is valued, that they should come forward with allegations against those who abuse their authority, and that crimes against them will be taken seriously. They also

9

send a message to those who have power that they are not above the law, and that they will be punished for crimes, just like everyone else. A 60-month term of incarceration will also serve as general deterrence for others.

### 4. *The need to avoid unwarranted sentencing disparities.*

A 60-month sentence will avoid unwarranted sentencing disparities. Section 3553(a)(6) states that, when imposing a sentence, the Court shall consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." The government's recommended sentence here falls just outside of the 63–78-month guidelines range to balance the defendant's lack of seniority within DOC with the egregiousness of his conduct.

Consider as examples the following recent sentencings—where each of the defendants were sentenced within about the past year—in cases that, like this one, involved (1) defendant corrections officers convicted of violating § 242 for (2) head or face strikes to (3) handcuffed inmates that (4) resulted in significant injuries. *See, e.g.*, *United States v. Randall Dennis et al.*, No. 23-cr-11-DLB-EBA-1 (E.D.KY. filed July 7, 2023) (sentencing, post-plea, three defendant corrections officers to 60 months, 27 months, and 15 months in prison for assaulting a non-violent inmate who was handcuffed, in leg shackles, and lying face-down in an isolated prison shower cell and later conspiring to cover up the beating); *United States v. Kenan Lister*, No. 21-cr-216-1 (M.D. Ten. filed Sept. 27, 2021) (sentencing, post-plea, defendant corrections officer to 24 months in prison for assaulting inmate who was sitting calmly in a holding cell by punching him in the head, striking his head multiple times, fracturing his ribs, and puncturing his lung and later leaving the inmate locked in a holding cell and filing a report that omitted the assault); *United States v. Devlon Williams & Larry Managan*, No. 21-cr-160-RAH-JTA (M.D. Ala. filed Mar. 9, 2021) (sentencing, post-trial, defendant corrections officer, a Sergeant, to 63 months in prison for assaulting a suicidal

10

inmate with a baton and shod feet, as the inmate was lying on the ground in a fetal position and bleeding from his wrists, and later lying to cover up the beating, and, at the government's recommendation, sentencing second corrections officer who participated in the beating and cover up to probation after he pled guilty and cooperated by testifying against the senior defendant at trial); *United States v. Joshua Titus*, No. 19-cr-23-PPS-JPK (N.D. Ind. filed Mar. 21, 2019) (sentencing, post-plea, defendant corrections officer to one year and one day for punching detainee in the face multiple times as the inmate was sitting in a chair and handcuffed behind his back causing the victim to fall backwards onto the concrete floor, and, once the inmate was on the floor, punching him about 10 more times in the face and body).

Consider, as additional examples, the following recent sentencings—where, like above, each of the defendants were sentenced within about the past year—in settings outside of corrections, but with similar facts, including strikes to the head. *See, e.g.*, *United States v. Terry Peck*, No. 21-cr-149-JD-APR-1 (N.D. Ind. filed Oct. 21, 2021) (sentencing, post-plea, defendant police officer to one year and one day for assaulting a handcuffed arrestee by slamming the arrestee's face and head against the police car); *United States v. Dylan Hudson*, No. 21-cr-102-SMH-MLH-1 (W.D. La. filed Apr. 28, 2021) (sentencing, post-trial, defendant police officer to 21 months in prison for assaulting a non-violent loitering suspect by repeatedly striking him in the head and face with a loaded pistol, tasing him in the base of the skull, and kicking him in the face). A 60-month sentence will fall within the survey of case law, and it will not create unwarranted sentencing disparities.

V. **CONCLUSION**

The defendant's assault on J.W., who was handcuffed and defenseless, warrants a strict sentence. Sixty months in prison will accomplish the objectives set out in § 3553(a).

        Respectfully submitted,

        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        D.C. Bar No. 481052

By:   */s/ Michael T. Truscott*
        Assistant United States Attorney
        D.C. Bar No. 1685577
        601 D Street NW
        Washington, DC 20530
        (202) 252-7223
        Michael.Truscott2@usdoj.gov

        KRISTEN CLARKE
        ASSISTANT ATTORNEY GENERAL

By:   */s/ Anna Gotfryd*
        Anna Gotfryd
        IL Bar 6323972
        Trial Attorney
        Criminal Section, Civil Rights Division
        U.S. Department of Justice
        950 Pennsylvania Avenue, NW
        Washington, DC 20530
        (202) 598-5764
        Anna.Gotfryd@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this, the 20th day of June, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case.

By:   */s/ Anna Gotfryd*
      Trial Attorney